[Civ. No. 3812. Third Appellate District.—June 13, 1929.]

C. J. OLSEN, Respondent, v. J. J. JACOBS MOTOR COMPANY et al., Appellants.

Butler, Van Dyke & Desmond for Appellants.

Frank L. Murphy for Respondent.

PLUMMER, J.—Plaintiff had judgment against the defendants for injuries received in an automobile collision, from which judgment the defendants appeal.

Upon this appeal the defendants assigned four grounds upon which reversal is asked: First, that the plaintiff was guilty of contributory negligence as a matter of law; second, that the court abused its discretion in refusing a continuance of the date of trial; third, that the court erred in admitting certain testimony; fourth, that the court improperly instructed the jury.

The transcript discloses that between the hours of 2 and 3 P. M. on the twelfth day of March, 1927, the plaintiff was driving westward on that certain street in the city of Sacramento, known as and called W Street, and that Howard Brown, an employee and agent of the defendant, J. J. Jacobs Motor Company, was driving southerly on that certain street in the city of Sacramento, known as and called Fifteenth Street, which street intersects the street just mentioned and known as W Street. Fifteenth and W Streets intersect at right angles, each street being fifty feet in width. The measurements mentioned in the transcript and the distances referred to by the witnesses relate to the center line of the intersection of said streets. At the time mentioned there were no buildings or obstructions on the quarter block adjoining the northeast corner of the intersection of the streets mentioned. The injury upon which the plaintiff obtained judgment resulted from a collision between an automobile driven by Olsen and an automobile belonging to the J. J. Jacobs Motor Company, driven by Howard Brown, the collision occurring at the intersection of the two streets mentioned. The record shows that as the plaintiff was driving westward, at a speed of between twelve and fifteen miles per hour, and when he was at a point about

seventy-five feet from the center of the two streets mentioned, which would place the plaintiff about fifty feet east of the easterly curb line of Fifteenth Street, he observed the defendant's car coming from the north on Fifteenth Street at a distance northerly from the intersection of approximately 350 feet, and that the defendant's car appeared to be traveling at a speed of between thirty-five and forty miles per hour; that the plaintiff paid no further particular attention to the defendant's car until he, the plaintiff, had reached the easterly line of the intersection of Fifteenth Street with W Street, when he again observed the defendant's car at a distance of about 175 feet from the intersection; that the plaintiff proceeded westerly until he reached the center of the intersection of the two streets, when he again paid attention to the defendant's car, and then observed that the driver of the defendant's car "was driving at an enormous speed; like a maniac; at an awful speed; at least 40 or 45 miles an hour"; and that at this instant of time the plaintiff, to use his expression, stepped on the accelerator of his car and moved westerly sufficiently far to escape a direct impact, but that the rear of his car was struck by the automobile belonging to the J. J. Jacobs Motor Company, with the result that the injuries, on account of which this action is prosecuted, ensued. No question is raised as to the judgment being excessive, nor would a further detail of the incidents of the collision aid in elucidating any of the issues raised upon this appeal.

Upon plaintiff's own testimony it is insisted that the plaintiff was shown to be guilty of contributory negligence as a matter of law. While the testimony of the plaintiff is set out extensively in the briefs, the point in issue is contained in a very few questions and answers, to wit: That the car driven by the defendant Brown was 350 feet from the intersection when first observed by the plaintiff, at which time the plaintiff was fifty feet east of the east line of Fifteenth Street, or seventy-five feet from the point of intersection; that the second time the plaintiff observed the car driven by Brown, the plaintiff was at the east line of Fifteenth Street, and the car driven by Brown was 175 feet away; that the third time the plaintiff took note of the Brown car was when the plaintiff was at the center of the intersection of the two streets as stated, he observed the

manner in which the car was being driven. The transcript further shows that the plaintiff was not watching the car being driven by Brown, continuously from the time he first saw him until the time of the collision. The terrific rate of speed at which the plaintiff states that the car was being driven by Brown was at the instant just preceding the actual collision.

At the time of the occurrences with which we are dealing, section 131 of the Motor Vehicle law read as follows: "When two vehicles approach an intersection of public highways at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed." Under this section, while the defendant's car was approaching from the right, the circumstances show that the plaintiff had the right of way. At the instant of time when the plaintiff reached the east line of Fifteenth Street where it intersected W Street, the defendant's car was 175 feet distant from the center line of W Street where it intersects Fifteenth Street. This would give the plaintiff the right of way if we disregard the additional fact that the defendant's car was being driven at an unlawful rate of speed, which, under the terms of the section referred to, would itself exclude the defendants from any claim of having the right of way. However, admitting that under ordinary circumstances the plaintiff would have the right of way, with cars placed in the position indicated by the foregoing, it is insisted that by reason of the fact that the plaintiff observed the defendant's car being driven southerly at a rate of between thirty-five and forty miles an hour, when it was distant 350 feet from the intersection, and again observed the defendant's car when it was only 175 feet from the intersection, and also in view of the fact that he might have observed the car between the two points just referred to, the plaintiff was guilty of contributory negligence as a matter of law in entering the intersection and proceeding westerly, and therefore cannot recover.

As a matter of law the plaintiff had the right of way; as a matter of law the plaintiff had a right to presume that the driver of the car belonging to the Motor Company would observe the law; as a matter of law the plaintiff had a right to enter the intersection at the time he did; as a

matter of law the Motor Company's car was at all times being driven at an unlawful rate of speed and had no right to enter the intersection at the time it did. As a matter of fact, we think it was a question for the jury in this case to determine whether the plaintiff exercised such reasonable diligence. for his own safety as the law requires one to exercise when so circumstanced, and if the jury, upon the facts which we have just recited, had reached the conclusion that the plaintiff was guilty of contributory negligence in not stopping his car and remaining without the intersection of the two streets until after the car driven by Brown had passed by, we would feel bound to uphold such verdict. In the recent case of *Flores* v. *Fitzgerald,* 204 Cal. 374 [268 Pac. 369], we have circumstances almost identical with the case at bar. In the Flores case a motorcyclist was traveling southerly on Buchanan Street at its intersection with Fulton Street in the city of San Francisco. The motorcyclist "did not stop before entering the intersection but was traveling at a speed of about eight miles per hour, and testified he could have stopped his machine at any time within one foot; that just before he entered the intersection he noticed appellant's machine about 150 feet westerly on Fulton Street approaching the intersection at a rapid rate of speed, between 35 and 40 miles per hour; that he proceeded to cross the intersection but did not look toward appellant's machine until he was 10 feet beyond the center of the intersection, when he looked to his right and appellant's automobile was right on him." Thus, the respondent in that case had the right of way, notwithstanding the fact that the appellant's machine was approaching from the right, just as is the case before us. In the Flores case the appellant was driving at an unlawful rate of speed, between thirty-five and forty miles per hour. The respondent in that case saw the appellant's machine when it was 150 feet distant, and noticed the speed but did not notice it again until it was right upon him in the intersection. The court then proceeds in its opinion to detail the circumstances of what resulted from the collision, which are immaterial to be mentioned. Just as in this case the results of the collision have no bearing upon anything we are called upon to decide, but after stating the results of the collision, the court disposes of the legal questions involved as follows:

"Contributory negligence is a question of law only when the court is impelled to say that from the facts reasonable men can draw but one inference, and that, an inference pointing unerringly to the negligence of the plaintiff contributing to his injury." (Citing *Reagh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 121]; *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500].) "In all other cases the question of contributory negligence is a question of fact for the jury." (Citing *Wahlgren* v. *Market Street Ry. Co.*, 132 Cal. 656 [62 Pac. 308]; *Jansson* v. *American S. S. Co.*, 189 Cal. 192 [208 Pac. 90].) The court, in its opinion in the Flores case, *supra*, also quotes from the case of *Donat* v. *Dillon*, 192 Cal. 426 [221 Pac. 193], as follows: "A motorist must at all times use due care to avoid colliding with another; he must be ever alert and watchful so as not to place himself in danger, and while he may assume that others will exercise due care, he cannot, for that reason, omit any of the care which the law demands of him. Assuming, therefore, that the defendant had the right of way, he was required to proceed across the intersection in a careful and prudent manner, ever-watchful of the direction in which danger was most likely to be apprehended. He could not close his eyes so far as the south-bound traffic on Chester avenue was concerned. To the contrary, having observed Biddle's car approaching at an exceedingly fast rate of speed for that vicinity, the defendant was no longer entitled to rely upon the presumption that the driver of the machine would comply with the rules of the road, and he was bound to take such reasonable measures as he could, under the circumstances, to prevent the injury. It was, therefore, a question of fact for the trial court to determine, upon all the evidence and the reasonable deductions therefrom, whether the defendant, after having seen the approaching machine, continued to exercise the care and prudence which a reasonable man would have exercised under the circumstances. And as we cannot say that the trial court reached an unreasonable conclusion, we are bound by its finding of the ultimate fact which determined the proximate cause of plaintiff's injuries." This statement of the law taken from the case of *Donat* v. *Dillon, supra,* is peculiarly applicable to this case, and shows that the question of the plaintiff's contributory negligence was a question of fact to be determined

by the jury. The plaintiff in the case at bar would correspond to the position of the defendant as referred to in the opinion of *Donat* v. *Dillon*.

In the case of *Whitelaw* v. *McGilliard*, 179 Cal. 349 [176 Pac. 679], we find language which we think applicable here upon the question as to whether the plaintiff was guilty of contributory negligence as a matter of law. It is there said: "The plaintiff could not be expected to yield the right of way to one so far away whose duty it was to slow down in crossing the intersection. When the defendant's son drove the vehicle upon that space, he was going at an unlawful rate of speed which he maintained. The rule regarding right of way does not impose upon the person crossing the street the duty of assuming that the other will continue across an intersecting street without slowing down as required by law. It is clear that if the defendant's son had been going at a lawful rate of speed, or had slowed down as required by law, there would have been ample opportunity for the safe passage of the motorcycle." Under section 113 of the Motor Vehicle Act it was lawful for the parties involved in this proceeding to drive a motor vehicle at a speed not exceeding twenty miles per hour at the intersection of Fifteenth and W Streets, and if the driver of the Motor Company's car had observed this requirement, there would have been no collision. It is true that had the plaintiff stopped his car and allowed the Motor Company's car to be driven past him, there would have been no collision, but the plaintiff was where he had a legal right to be, and whether, under the circumstances, his being where he had a legal right to be was the result of contributory negligence on his part, as a matter of fact was a question for the jury to determine.

As bearing upon the questions here involved in supporting the view which we have here stated, we may cite the cases of *Commonwealth Ins. Co.* v. *Riverside-Portland Cement Co.*, 69 Cal. App. 165 [230 Pac. 995]; *Carbaugh* v. *White Bus Line*, 51 Cal. App. 1 [195 Pac. 1066]. Other cases might be cited but the foregoing establish the rule which we think applicable to this case, to wit, whether the plaintiff was guilty of contributory negligence was a question of fact for the jury to determine, and having been

determined adversely to the appellant's contention, we are bound by the verdict of the jury.

■  Was it an abuse of discretion for the trial court to deny the defendant's motion for a new trial? The record discloses that the denial of the defendant's motion for a continuance was a denial of the second application which was presented to the court about ten days subsequent to the granting of the first continuance. Upon the making of the second application for a continuance, counsel for appellants stated to the court, in substance, the following: "The driver of his car, Mr. Howard Brown, who is also one of the defendants here, was in the employ of the Jacobs Motor Company, and sometime before the trial was set, I believe, about ten days, a week or so before that we had been under the impression that Mr. Brown was working for the Powell Machinery Company, where he had been employed for four or five months succeeding the date of this accident, and we had been communicating with him off and on, and he assured us that he would not change his address or depart from the city without letting us know where he would be located. However, he did not do that, and I am afraid that Mr. Brown is financially irresponsible and perfectly willing to slide out of the picture. We endeavored to locate him, and being unable to do that, we asked for a continuance which was granted by the court." This was a recital of what occurred at the first continuance of the trial based upon the motion of the defendant. Upon the present motion, counsel stated that they had employed a man to search for Mr. Brown; that they had not been able to locate him; that the testimony of Mr. Brown was very important in behalf of the defendants. The motion for a continuance was not supported by any affidavit. There is nothing in the record to show what the defendants expected to prove by Howard Brown. There is nothing in the record to show that the defendants had subpoenaed Howard Brown as a witness, or had made .any endeavor to subpoena him as a witness. There is nothing in the record to show that Howard Brown would have testified to anything helpful to the cause of his co-defendants. The motion does not appear to have been made in behalf of the defendant Mr. Brown, for any reason that he could not be present. There was nothing before the court to show that Howard Brown would

be present if a continuance of the trial was granted. If the motion had been made on the ground of the absence of a party, the case of *Beckman* v. *Waters,* 161 Cal. 581 [119 Pac. 922], would constitute a complete answer, where it is said: "It is also claimed that the court erred in denying the motion for a continuance on the ground of the absence of the plaintiff. The court did not abuse its discretion in so ruling. The affidavits offered to support the motion showed, at most, that the plaintiff was unable to be present at the time set for the trial. But there was nothing to indicate that he would be able to appear at any later time, nor was there any sufficient showing of an excuse for the failure to take his deposition in proper form before the trial." Section 595 of the Code of Civil Procedure, so far as pertinent here, reads as follows: "A motion to postpone a trial on the ground of the absence of evidence can only be made upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to procure it." The motion having been made upon the simple request of counsel, it would seem that in view of the section of the code to which we have referred, citation of cases showing the correctness of the ruling of the trial court would be unnecessary. However, we may refer to the following: *Canty* v. *Pierce,* 173 Cal. 205 [159 Pac. 582]; *Sheldon* v. *Landwehr,* 159 Cal. 778 [116 Pac. 44]; *Harper* v. *Lamping,* 33 Cal. 641; *Watson* v. *Columbia Basin etc. Co.,* 22 Cal. App. 556 [135 Pac. 511]; *Marcucci* v. *Vowinckel,* 164 Cal. 693 [130 Pac. 430]).

█ It may be further stated that the record shows that the defendants' motion for a new trial was not supported by any affidavits showing, or attempting to show, any efforts to secure the presence of Howard Brown, nor any statement to the effect that he would probably be present if a new trial was granted; nor was the motion for a new trial supported by any affidavit setting forth or stating any facts which could be substantiated by the testimony of Howard Brown. Under similar circumstances it was held in the case of *Pilot Rock etc. Co.* v. *Chapman,* 11 Cal. 161, that an appellate court would not interfere with the discretion of the trial court in denying a new trial nor in denying a continuance. This rule was followed in the case of *People* v. *De-Lacey,* 28 Cal. 590, where it was held that the rule should

apply to criminal as well as civil cases. The record in this case, we think, conclusively shows that the trial court did not err in refusing to grant the second postponement of the trial.

▮ The third ground urged for reversal relates to the order of the trial court admitting in evidence statements made by the defendant Howard Brown. This statement related to the speed at which Brown was driving the Motor Company's car, and also that he was trying it out for the purpose of locating certain noises or squeaks. When this testimony was offered the defendants objected thereto and the court, in admitting the testimony, limited the same to the defendant Howard Brown, and instructed the jury as follows: "Ladies and gentlemen of the jury: There are two defendants in the case, a man named Jacobs and a man named Brown. Now, as to Jacobs, this objection is sustained, but as to Mr. Brown, one of the parties to the action, who made the statements and who was present, the objection is overruled; as to him, you may consider it as evidence, but not as to Jacobs." In support of their contention that the statements of Brown, one of the co-defendants, should not have been admitted in evidence as against him, a number of cases are cited where a principal only is sued, and it was sought to introduce statements of employees made after the occurrences involved and not constituting a part of the *res gestae*. We do not need to review the cases cited by appellant for the simple reason that while they state the law applicable to the circumstances involved in the respective cases cited, they are not pertinent here. In the case at bar, Howard Brown is and was one of the defendants. Any statement made by him was admissible as against him and properly limited as admissible against him by the court in the case. Instead of quoting from the cases supporting this statement, we will simply cite them: *Lampton* v. *Davis Standard Bread Co.*, 48 Cal. App. 116 [191 Pac. 710]; *Vrooman* v. *Voight*, 46 Cal. 392; *Vallejo etc. Ry. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 Pac. 238]; *Keyes* v. *Geary St. Ry. Co.*, 152 Cal. 437 [93 Pac. 88]; *Jeslow* v. *Duncan*, 125 Wash. 492 [216 Pac. 868]. Other cases might be cited, but those referred to establish the rule in California applicable to circumstances similar to those involved in the case at bar. It therefore follows that the trial court

did not err in admitting the testimony referred to, limiting it as applicable only to the defendant Howard Brown.

It is finally contended that the trial court improperly instructed the jury in that the following portion of the charge was not pertinent to any of the issues presented. The instruction just referred to is numbered 5 and reads as follows: ''The jury is instructed that when a person is in imminent danger he is not called upon to exercise that intelligence and judgment he would be expected to exercise were he not in such danger, so if a party in imminent danger has two ways open to him, but has not the time to stop and investigate and determine which is the right or safe way and which is the wrong or unsafe way, his choosing of the latter is not, under the circumstances, negligence on his part.'' Prior to giving this instruction the trial court had fully advised the jury as to the law relating to contributory negligence. In fact, the instructions given to the jury by the court are singularly clear and free from any ambiguity, conflict or uncertainty, and fully advised the jury as to the law involved in this case. Appellants do not complain that the portion of the charge just quoted is not a correct statement of the law, but simply question its applicability. The testimony of the plaintiff in this case was to the effect that he did not appreciate the danger which threatened him until he had reached the center of the intersection of Fifteenth and W Streets. At this moment of time he observed that he was about to be run down by the rapidly approaching automobile belonging to the Motor Company, and that in order to escape he stepped on the accelerator in the hope of getting his car entirely free from the path of the Motor Company's automobile. Two courses were open to the plaintiff: He might have set the brakes with all the force possible; or, he might attempt, by speeding up his own machine, to get out of the way. Either course was hazardous. If the plaintiff set the brakes of his automobile he was confronted with the possibility of stopping in the path of the defendant's automobile and being crushed by the force of the impact. On the other hand, if he speeded up his machine so that he at least partly escaped the force of the impact, and, as actually resulted in this case, his machine received the force of the blow to the rear of his

machine, the consequences that would ensue would probably be less serious. With these circumstances in view, which we think should be reasonably considered by an automobile driver circumstanced as the plaintiff was in this case, makes the instruction which we have quoted applicable. Up until this moment of time we think the plaintiff by his testimony showed that he had a right to assume that the driver of the Motor Company's car would observe the law. As was said in *Moreno* v. *Los Angeles Transfer Co.*, 44 Cal. App. 551 [186 Pac. 800] : "Contributory negligence cannot be predicated upon an omission to assume that another will violate the law" (citing *Medlin* v. *Spazier*, 24 Cal. App. 242 [137 Pac. 1078] ; *Raymond* v. *Hill*, 168 Cal. 473 [143 Pac. 743]). Again, the appellants' contention in this case is that the plaintiff was guilty of contributory negligence in not observing that the car driven by Howard Brown would not be slowed down as it approached the intersection so as to admit of a safe crossing by the plaintiff, and that it was the duty of the plaintiff, under the circumstances, to have stopped his car before reaching the point where the paths of the two machines would intersect, and that his failure to do so constituted contributory negligence. The jury, of course, found against this contention on the part of the appellants, but this statement shows that even if the charge of the court, as to one acting in an emergency, be held inapplicable, section 4½ of article 6 of the Constitution would prohibit reversal on that account, for the reason that it could not have worked any prejudice to the appellants because the question of contributory negligence on the part of the plaintiff, urged by the appellants, and found adversely to them by the jury, rested upon incidents, occurrences and opportunities preceding the time when the plaintiff found himself in imminent danger.

Finding no cause for reversal, the judgment of the trial court is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 13, 1929, and a petition by appellants to have the cause heard in the Su-

preme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1929.

All the Justices present concurred.